UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

MICHAEL HESTER,

        Petitioner,

v.

NICK LUDWICK,

        Respondent.

Case No. 1:09-cv-770

Honorable Robert Holmes Bell

**REPORT AND RECOMMENDATION**

        This is a habeas corpus proceeding brought by a state prisoner pursuant to 28 U.S.C. § 2254. The *pro se* petition does not challenge petitioner's underlying criminal conviction, but arises from the decision of the Michigan Parole Board to revoke petitioner's parole on September 25, 2006. The Parole Board's decision was based on a hearing conducted by an administrative law examiner (ALE), who heard testimony from seven witnesses, including petitioner himself, during a two-day hearing in June and July of 2006. At the conclusion of the hearing, at which petitioner was represented by counsel, the ALE issued a two-page hearing summary finding petitioner guilty of count IV (leaving Wayne County without permission), count VIII (threatening and intimidating behavior towards Chelsea Cunningham), and count IX (leaving Wayne County without permission). The report recommended dismissal of the six other charges. On September 26, 2006, a panel of the Parole Board adopted the ALE's written findings and recommendations and revoked petitioner's parole. Petitioner filed a petition for judicial review at the Ingham County Circuit Court, raising due-process violations in connection with the revocation proceedings. Circuit Judge William Collette issued a written opinion

on November 29, 2007, analyzing and rejecting petitioner's due-process claims. The Michigan appellate courts thereafter denied discretionary review.

On August 21, 2009, petitioner initiated this habeas corpus proceeding. His *pro se* petition raises two grounds for relief. First, he asserts that the evidence before the ALE was insufficient to support a conclusion that petitioner was guilty of counts IV, VIII, and IX of the revocation petition. Second, petitioner asserts that the ALE was biased against him. Judge Collette considered and rejected the first ground in state court judicial review proceedings; the second was not raised. Respondent has filed an answer to the petition, supported by a certified copy of the record before the Michigan Parole Board (docket # 22). Upon review of the record, I conclude that petitioner's habeas corpus claims are not meritorious and recommend that the petition be denied.

## Proposed Findings of Fact

### A. Administrative Proceedings

Petitioner, Michael Leon Hester, was incarcerated pursuant to a 1999 conviction for resisting and obstructing a police officer, MICH. COMP. LAWS § 750.479, for which he was sentenced to a term of imprisonment of 3½-to-15 years, enhanced by petitioner's status as a habitual felony offender. MICH. COMP. LAWS § 769.12. On April 30, 2004, petitioner was released on parole for an 18-month term. The term of parole was extended on October 28, 2005, after petitioner was arrested in Ingham County for stalking Dyana Males. Petitioner was convicted of that misdemeanor charge in the 54-A District Court (Lansing) and sentenced to 24 months' probation on November 15, 2005. (Judgment of Sentence, A.R. 88, docket # 22).

On February 13, 2006, a parole agent charged petitioner with five violations of conditions of parole: (i) engaging in assaultive or threatening behavior against Dyana Males (the

victim of petitioner's stalking) on February 3, 2006; (ii) failure to comply with special condition 4.16 by having contact with Dyana Males; (iii) leaving Wayne County without permission on January 10, 2006; (iv) leaving Wayne County without permission on February 3, 2006; and (vi) driving on a suspended license. On February 22, 2006, the agent added count VI, alleging that petitioner failed to report a police contact within twenty-four hours on September 9, 2005, and count VII, alleging that petitioner drove on a suspended license. (A.R. 79-80).

On February 23, 2006, examiner John Remillet conducted a preliminary parole revocation hearing, taking testimony from the two eyewitnesses, Dyana Males and Lisa Jansen. Examiner Remillet issued a written report (A.R. 73-76) finding probable cause on each charge.

On March 30, 2006, the parole agent amended the charges once again. Count VIII charged that between September 16, 2005, and December 19, 2005, petitioner engaged in assaultive, intimidating, or threatening behavior by following and frightening Chelsea Cunningham in Ingham County. Count IX alleged that on December 19, 2005, petitioner violated special condition 4.1 by leaving Wayne County without permission. (A.R. 65).

On June 21, 2006, petitioner and appointed counsel appeared before ALE Gary M. Kasenow. On that day, the ALE took testimony from State Trooper Mike Lee, Parole Agent Michael Brooks, Parole Agent Robertson, Dyana Males, and Lisa Jansen. At a continued hearing conducted on July 27, 2006, the ALE took testimony from Chelsea Cunningham, Tabitha Munday, and petitioner. The ALE prepared a two-page summary of evidence (A.R. 37-38). The evidence presented at the parole revocation hearing showed that petitioner was charged in Ingham County with stalking Dyana Males in 2005, leading to an extension of his parole term and added special conditions not to leave Wayne County and not to have any contact with Dyana Males. Parole Agent Brooks testified, however, that he gave petitioner permission to leave Wayne County for purposes of making court

appearances on the stalking charges in Ingham County and visiting his attorney. During one of these trips to Lansing, petitioner was stopped by trooper Mike Lee, who issued him a speeding ticket on September 8, 2005.

Dyana Males, a Michigan State University student who was the complainant in the previous stalking case, testified that on February 3, 2006, she was stopped at a traffic light on East Grand River Avenue in East Lansing and saw petitioner driving in the car next to her. Males testified that the parolee "did not look at her or gesture at her and when the light changed, he drove away." (A.R. 37). Males called the East Lansing Police, but they did not respond. Witness Lisa Jansen (the roommate of Dyana Males) testified that she had been a witness against petitioner in the Males case and that on January 10, 2006, she was at the MSU Student Union, where she saw petitioner walk in. He walked by the table where Jansen was sitting. Petitioner did not address her. Jansen called Males and told her about the sighting.

Chelsea Cunningham, a student at Lansing Community College, testified that the first time she ever saw petitioner was on September 16, 2005, as she was walking to her car. Petitioner walked next to her and started talking to her, asking her "a lot of strange questions." Cunningham was concerned enough that she asked for security. On December 19, 2005, she again saw petitioner as she was walking to her car. According to Cunningham, she saw petitioner at other times in the area as well.

Petitioner testified that before January of 2006, he had more or less blanket permission to go to Ingham County for purposes of the then-pending case. He denied being in Ingham County on January 10 or February 3, 2006, and denied having any contact with Chelsea Cunningham.

On the basis of the foregoing testimony, the ALE determined that petitioner was not guilty of counts I, II, III, or V. He found that the contact between petitioner and Males while the two

were driving on Grand River Avenue did not involve any intent by petitioner to contact Males in violation of the parole order. He further found that petitioner had permission to be in Ingham County on that day. The ALE found petitioner not guilty of the charges in counts VI and VII, as the evidence was insufficient to show that he had a suspended license on September 8, 2005. The ALE also found that petitioner had mentioned this contact to his parole agent.

The ALE found petitioner guilty of count IV, leaving Wayne County without permission. Even though petitioner may have had blanket permission to go to Ingham County for court purposes, that permission did not extend to entering the MSU Student Union. Likewise, he found petitioner guilty of counts VIII and IX, charging harassing and threatening behavior towards Chelsea Cunningham and leaving the county without permission. The ALE found that petitioner's conduct was unusual and inappropriate, even if it did not constitute stalking. He found the complainant to be very composed and credible and rejected the argument that she was overreacting to the situation. Even if petitioner had approval to be in Ingham County for court that day, the approval did not encompass the behavior testified to by Cunningham.

On September 25, 2006, a panel of the Michigan Parole Board voted to revoke petitioner's parole and directed a 24-month continuance in custody. The Parole Board found that the violations demonstrated that petitioner could not be managed in the community, and that he posed a danger. (A.R. 35).

### B. Judicial Review

Petitioner filed a timely petition for judicial review in the Ingham County Circuit Court. (docket # 18). The petition asserted two grounds for relief. First, petitioner alleged that the evidence presented at the revocation hearing failed to establish guilt by a preponderance of the evidence, in

violation of Michigan Compiled Laws § 791.240a and procedural due process. The second ground was that petitioner was denied a fair and impartial hearing by the ALE's inadequate fact-finding. The petition did not challenge the impartiality of the ALE.

After receiving briefing from both parties, Judge William Collette issued a written opinion analyzing and rejecting petitioner's challenge to parole revocation. The court's opinion and order, dated November 29, 2007, reviewed the evidence summarized by the ALE. The court pointed out that petitioner's challenge to the sufficiency of the evidence posited an incorrect standard of proof. Under the governing Michigan statute, MICH. COMP. LAWS § 24.306(1)(d), the administrative finding must be supported by "substantial evidence" which may be substantially less than a preponderance of the evidence. (Op., 5). The court found that petitioner's challenge was essentially directed to the credibility of testimony of the complaining witnesses, a matter not properly raised on petition for judicial review. The court found that the ALE's decision was supported by "competent, material and substantial evidence on the whole record." (*Id.* at 6). On this basis, the circuit court affirmed the revocation decision.

Petitioner filed a delayed application for leave to appeal to the Michigan Court of Appeals. On August 22, 2008, the court denied the application, for lack of merit in the grounds presented. Petitioner filed an application for leave to appeal to the Michigan Supreme Court on October 1, 2008. By order entered January 27, 2009, the court denied leave to appeal. (Supreme Court record, docket # 24).

Petitioner initiated this habeas corpus action on August 21, 2009. The *pro se* petition raises two claims. First, petitioner asserts that he was deprived of liberty without due process of law, because the evidence presented at the parole revocation hearing was insufficient to support a finding

of guilt. Second, he alleges a due-process violation arising from a lack of fairness and impartiality by the ALE.

## Applicable Standard

Because petitioner filed his habeas application long after the April 1996 enactment of the Antiterrorism and Effective Death Penalty Act, Pub. L. 104-132, 110 Stat. 1214 ("AEDPA"), the provisions of that law govern the scope of the court's review. *See Penry v. Johnson*, 532 U.S. 782, 791 (2001); *Wilson v. Parker*, 515 F.3d 682, 691 (6th Cir. 2008). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands that state court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citations omitted); *see Wilkins v. Timmerman-Cooper*, 512 F.3d 768, 774 (6th Cir. 2008). "AEDPA requires heightened respect for state court factual and legal determinations." *Lundgren v. Mitchell*, 440 F.3d 754, 762 (6th Cir. 2006). If a state court adjudicated the claim, deferential AEDPA standards must be applied. 28 U.S.C. § 2254(d); *see Waddington v. Sarausad*, 129 S. Ct. 823, 831 (2009).

The AEDPA prevents federal habeas "retrials" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). Section 2254(d) states that an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based

upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "Section 2254(d)(1)'s 'contrary to' and 'unreasonable application' clauses have independent meaning. A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than the [Supreme Court] on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. at 694 (citations omitted). A federal court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from Supreme Court decisions, but unreasonably applies it to the facts of the particular case, or if the state court unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams v. Taylor*, 529 U.S. 362, 407 (2000); *see Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. at 412; *Wilson v. Parker*, 515 F.3d at 691; *Ross v. Petro*, 515 F.3d 653, 660 (6th Cir. 2008), *cert. denied*, 129 S. Ct. 906 (2009). This court may not consider decisions of lower federal courts in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *See Williams*, 529 U.S. at 381 ("If this Court has not broken sufficient legal ground to establish an asked for constitutional principle, the lower federal courts cannot themselves establish such a principle with clarity sufficient to satisfy the AEDPA bar."); *see also Knowles v. Mirzayance*, 129 S. Ct. 1411, 1419 (2009); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).

Regardless of the subsection of 2254(d) relied on by the petitioner, AEDPA requires heightened respect for state factual findings. 28 U.S.C. § 2254(e)(1); *see Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence 28 U.S.C. § 2254(e)(1); *Jaradat v. Williams*, 591 F.3d 863, 864-65 (6th Cir. 2010); *Mills v. Cason*, 572 F.3d 246, 250 (6th Cir. 2009).

Although this petition does not seek review of a criminal conviction, it is nevertheless clear that the provisions of AEDPA apply. In *Wilkins v. Timmerman-Cooper*, 512 F.3d 768 (6th Cir. 2008), the Court of Appeals reviewed a district court decision dismissing a habeas corpus petition challenging petitioner's parole revocation. The court determined that all provisions of AEDPA apply, including the requirement that habeas corpus relief is available only if the last reasoned decision of the state courts was contrary to or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States. 512 F.3d at 774.

## Discussion

### I.     Insufficiency of the Evidence

Petitioner's first claim (and the only one raised in the state courts) is that his parole was revoked in violation of due process, because the evidence was sufficient to support a finding that he violated conditions of parole. Examination of the law and the record demonstrates that this contention is meritless.

In *Morrissey v. Brewer*, 408 U.S. 471 (1972), the Supreme Court established a parolee's right to minimal process in connection with revocation of his limited liberty interest in continued release on parole. In defining the process due to a parolee, the Supreme Court recognized

two important stages in the revocation process -- the preliminary hearing and the revocation hearing. 408 U.S. at 485. The due-process requirements at the revocation hearing include:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Id.* at 489. The Court emphasized, however, that the parole revocation hearing should not be equated with a full criminal trial. *Id.* Rather, the process should be flexible and may take into consideration evidence that would not necessarily be admissible in an adversary criminal proceeding. *Id.* The requirements established by *Morrissey* are codified in Michigan law, which provides for both a preliminary and a fact-finding hearing as a prerequisite to parole revocation. *See* MICH. COMP. LAWS § 791.240a.

The record demonstrates that Michigan officials scrupulously adhered to the procedural requirements of *Morrissey* in connection with petitioner's parole revocation proceedings. Petitioner had both a preliminary hearing and a final revocation hearing. The final revocation hearing was conducted by an administrative law examiner, an attorney employed by the independent State Office of Administrative Hearings and Rules. The ALE heard testimony from seven witnesses, including petitioner, and summarized his findings in a written, two-page report, which was ultimately adopted by the Parole Board.

The only due-process challenge raised by petitioner in the state courts was that the evidence was insufficient to support a finding that he violated conditions of parole. Petitioner asserts that the state has the burden of proving a violation by a preponderance of the evidence. This is clearly

an incorrect standard. The Supreme Court has never articulated the precise standard by which findings of a parole violation must be proven in administrative proceedings. In the related area of prison disciplinary proceedings, which can also result in a deprivation of liberty, the Supreme Court requires only that "some evidence" support the administrative finding. *See Superintendent v. Hill*, 472 U.S. 445, 455 (1985). Most lower courts have applied the *Hill* standard to parole revocation proceedings. *See, e.g.*, *Caswell v. Calderon*, 363 F.3d 832, 839 (9th Cir. 2004); *Phifer v. Clark*, 115 F.3d 496, 501 (7th Cir. 1997); *Villarreal v. U.S. Parole Comm'n*, 985 F.2d 835, 839 (5th Cir. 1993); *Kimberlin v. Dewalt*, 12 F. Supp. 2d 487, 489 (D. Md. 1998). Other courts have applied an essentially identical standard, expressed in different words, under which parole revocation violates due process only if the decision is either totally lacking in evidentiary support or is so irrational as to be fundamentally unfair. *See Duckett v. Quick*, 282 F.3d 844, 847 (D.C. Cir. 2002). Under this standard, the evidence, considered as a whole, must be sufficient in both quality and reliability to ensure fundamental due-process rights. *See Singletary v. Reilly*, 452 F.3d 868, 872 (D.C. Cir. 2006). In no event does the Due Process Clause require proof by a preponderance of the evidence.

Examination of the evidence summarized by the ALE demonstrates that it was clearly sufficient to provide a rational, reliable basis for the decision to revoke parole. The parole revocation charges arose from a number of complaints by young women that petitioner had engaged in threatening and harassing behavior in East Lansing, Michigan. Before the time of these encounters, petitioner was subject to a stalking prosecution involving Dyana Males as the alleged victim. As a result, the Parole Board had ordered petitioner to remain in Wayne County and to avoid all contact with Ms. Males.[1]

---

[1] Among petitioner's previous felony convictions was a conviction for fourth-degree criminal sexual conduct, involving force or coercion, in 1995. He also had one conviction for failing to register as a sex offender. In addition, in 2004, petitioner had been charged again for criminal sexual conduct, but the charges were ultimately dropped. (*See* Parole Violation Report, A.R. 91-92).

After petitioner was convicted in the 54A District Court of stalking Dyana Males, both Males and other young women complained to police of threatening and menacing behavior by petitioner in East Lansing, Michigan. These incidents formed the basis for the nine parole violation charges heard by ALE Kasenow in June and July of 2006.

Of the nine parole violation charges, the ALE found insufficient evidence to support six charges. He sustained counts IV, XIII, and IX. The ALE sustained count IV, which charged petitioner with leaving Wayne County on January 10, 2006, the day that Lisa Jansen testified he menaced her in the Michigan State University Student Union. The ALE sustained count VIII, which charged him with engaging in assaultive, intimidating, or threatening behavior by following and frightening Chelsea Cunningham in Ingham County. Finally, the ALE sustained count IX, which alleged that he left Wayne County without permission on December 19, 2005, the date upon which he had contact with Chelsea Cunningham.

The two charges that petitioner left Wayne County without permission are amply sustained by the evidence. In each case, an eyewitness testified that she saw petitioner in Ingham County. Petitioner presented two essential defenses: he denied under oath being in Ingham County on that days in question and he asserted that his parole agent had given him blanket permission to travel to Ingham County for purposes of court appearances. The ALE disbelieved petitioner's denials. With regard to the claim of permission, the ALE found that even though petitioner may have had permission to travel to the Lansing area for purposes of attending court, his presence at the MSU Student Union was beyond the scope of any presumed permission.[2]

---

[2] The stalking charges against petitioner in 54A District Court were resolved in November 2005. It is therefore unclear why his permission to travel to Ingham County would have extended into the year 2006. In any event, the Michigan State University Student Union is approximately four miles from the 54A District Courthouse in downtown Lansing. The ALE was more than justified

The evidence is also more than sufficient to sustain the charge that petitioner engaged in assaultive, intimidating, or threatening behavior with regard to Chelsea Cunningham. The victim testified that as she was walking to her car, petitioner began to walk next to her and started asking her a lot of strange questions. Two months later, on December 19, he again followed her to her car. She testified to additional times that she saw petitioner in the area, culminating in her report to police. (A.R. 37). Against this testimony, petitioner denied having any contact with Cunningham. The ALE found that this contact, although not technically amounting to stalking, constituted a violation of general parole condition no. 4, which forbids a parolee from engaging in "assaultive, abusive, threatening, or intimidating behavior." (Parole Conditions, A.R. 125). Relying on an inapposite Department of Corrections Policy Directive, PD 03.03.105, which applies to prison misconduct and not parole, petitioner argues that the findings of the ALE do not comport with the requirements of Michigan regulation. Petitioner's arguments are insubstantial. It was not necessary for the state to prove that petitioner was guilty of criminal stalking, nor was the state required to prove that petitioner was in violation of the inapplicable policy directive that applied to prison behavior. Rather, the only burden was to produce reasonable evidence that petitioner had violated parole condition no. 4, which prohibited threatening or intimidating behavior. The ALE was entitled to believe Ms. Cunningham and to disbelieve petitioner's denials. The hearing examiner's credibility determinations are findings of fact that the court must presume to be correct under 28 U.S.C. § 2254(e)(1) in the absence of clear and convincing evidence to the contrary. *See Brown v. Jansen*, 619 F. Supp. 2d 372, 376 (W.D. Mich. 2009). Petitioner has presented no evidence that the hearing

---

in determining that petitioner was egregiously in excess of any permission granted to travel to Ingham County for court purposes.

examiner's decision to credit the testimony of the victims was "objectively unreasonable in light of the evidence presented." *Id.*

On direct review of the parole revocation decision, the Ingham County Circuit Court carefully reviewed the record and found the evidence to be sufficient. The circuit court's decision was neither contrary to nor an unreasonable application of the Supreme Court's due-process holdings in *Morrissey v. Brewer* and its progeny. Petitioner's due-process challenge to the sufficiency of the evidence must therefore be rejected.

### II. Biased Decision Maker

Petitioner's second habeas corpus claim is that the ALE was biased against him, as evidenced by his erroneous ruling. This claim was never raised in the state courts. The Habeas Corpus Act requires a petitioner to exhaust all available state remedies on every claim. *See* 28 U.S.C. § 2254(b)(1)(A); *see O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *Rose v. Lundy*, 455 U.S. 509, 518-19 (1982). Under AEDPA, however, the court has discretion to deny an application on the merits, notwithstanding the failure of the applicant to exhaust state remedies. 28 U.S.C. § 2254(b)(2). Because petitioner's challenge to the impartiality of the hearing officer is meritless, I recommend that it be denied, despite the lack of exhaustion.

A fundamental requirement of the Due Process Clause is that a decision maker be impartial and unbiased. *Marshall v. Jerricco, Inc.*, 466 U.S. 238, 243 (1980). In *Morrissey v. Brewer*, the Supreme Court listed the requirement that the hearing body be "neutral and detached" as a due-process requirement for the revocation of parole, pointing out that a traditional parole board would indeed be such a body and that the members "need not be judicial officers or lawyers." *Morrissey*, 408 U.S. at 489. Michigan law has gone beyond these minimal due-process requirements, by investing

hearing authority in parole matters in administrative law examiners, attorneys who do not work for the Department of Corrections but are employed by the independent State Office of Administrative Hearings and Rules, which has jurisdiction over all contested administrative matters.

The Supreme Court has identified a number of situations in which decision makers might be deemed biased. For example, the Court has invalidated a system in which justices of the peace were paid for the issuance, but not for non-issuance, of search warrants. *Connally v. Georgia*, 429 U.S. 245 (1977). In *Gibson v. Berryhill*, 411 U.S. 564, 578-79 (1973), the Court found wanting a state administrative system in which the adjudicative board consisted of optometrists in private practice who were called upon to pass judgment upon optometrists who competed with them. In the parole revocation context, the Court has disapproved lodging decision-making power in parole officers, finding that due process requires a more detached and neutral decision maker. *Morrissey*, 408 U.S. at 485-86. Petitioner invokes none of these principles, or anything remotely like them, in his challenge to the impartiality of the ALE in the present case. Rather, he argues that bias is shown because the hearing officer "totally ignored pertinent facts adduced at my parole revocation hearing in order to find me guilty." (Brief, docket # 2, at 10). Petitioner then proceeds to reargue the facts presented at the revocation hearing, asserting that he should not have been found guilty. This challenge to the impartiality of the hearing officer is a not-very-thinly-disguised reargument of petitioner's challenge to the sufficiency of the evidence. It provides no basis for finding that ALE Kasenow was biased, prejudiced, or predisposed to find petitioner guilty. In fact, the ALE obviously scrutinized each charge against petitioner, as he dismissed six out of the nine counts for lack of sufficient evidence. On this record, petitioner cannot sustain any challenge to the impartiality of the hearing officer.

## Recommended Disposition

Petitioner has not established grounds for habeas corpus relief. I therefore recommend that the petition be denied on its merits.


Dated: April 14, 2010                     /s/ Joseph G. Scoville
                                          United States Magistrate Judge


## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). General objections do not suffice. *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).